Michael **RUNYON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–87–01015–CR.

Court of Appeals of Texas, Dallas.

July 6, 1988.

Ross Teter, Dallas, for appellant.

Yolanda M. Joosten, Dallas, for appellee.

Before HOWELL, ROWE, and BAKER, JJ.

ROWE, Justice.

Michael Runyon was sentenced to ten years' imprisonment in the Texas Department of Corrections by the trial court after he pleaded guilty to the indicted offense of theft over $20,000.00. Appellant brings seven points of error on appeal. The first six points complain of the lack of voluntariness of the guilty plea and the accompanying waiver of jury trial caused by an alleged unenforceable plea bargain agreement and ineffective assistance of counsel, circumstances which allegedly deprived him of due process and equal protection of the laws. Appellant's seventh point of error complains of the trial court's failure to make findings of fact at the hearing on his motion for new trial. We affirm the trial court's judgment.

The underlying fact of appellant's guilt is not disputed in this case. The only dispute is whether there was an enforceable plea bargain agreement under which appellant should have received a probated sentence in exchange for a plea of guilty and the making of restitution in a fixed sum. At trial, appellant was repeatedly admonished by the trial court that he did not have a plea bargain agreement as to punishment. The appellant, however, pleaded guilty after this lengthy admonishment.[1] On motion for new trial and on appeal, appellant contends that his guilty plea was involuntary. Appellant asserts that he was relying on an undisclosed bargain which, he further asserts, was supposed to be put in writing before the sentencing hearing, at which time restitution in the sum of $214,-433.07 was to be made and the prosecutor was to recommend probation. Appellant never made restitution, nor did he prove his ability to comply with the restitution requirements. The State denies any agreement to put the alleged plea bargain in writing and adamantly argues that the prosecutor specifically refused to make such an agreement.

A guilty plea passes constitutional muster when it is voluntary, when it is intelligently made, and, when made on the advice of counsel, such counsel is reasonably competent and renders effective assistance. *Meyers v. State*, 623 S.W.2d 397, 401 (Tex.Crim.App.1981). Attention must

---

1. We view the extensiveness of the trial court's admonishment to be material to appellant's disputed voluntariness and therefore attach recita-tion of that part of the trial court proceedings as an appendix to this opinion.

be paid specifically to whether a defendant has been deprived of due process and due course of law. *Id.* at 402. A guilty plea is not rendered involuntary merely because it arises out of a plea bargaining situation. *Jacobs v. State*, 493 S.W.2d 792, 793 (Tex. Crim.App.1973). The defendant must be aware, however, of the direct consequences, including the actual value, of any commitments made to the defendant by the court, the prosecutor, or his counsel. *Ex parte Gibauitch*, 688 S.W.2d 868, 861 (Tex. Crim.App.1985). Furthermore, a plea bargain agreement is not effective until it is recognized by the trial court. *Ex parte Williams*, 637 S.W.2d 943, 947 (Tex.Crim. App.1982). The State becomes bound when the trial court accepts the agreement. *Id.* If the State becomes bound and is then unable to carry out its side of the bargain, a defendant is then entitled to withdraw his plea. *Ex parte Slaughter*, 689 S.W.2d 464, 465 (Tex.Crim.App.1985).

■ Appellant argues in his first six points of error that he had a plea bargain agreement at the time he made his plea that entitled him to probation. He alleges that when the trial court entered a sentence of imprisonment, the bargain was breached. He therefore asserts that he should have been allowed to withdraw his guilty plea, the plea being a result of misrepresentations and coercions. The admonishments by the trial court, however, belie this argument in that appellant was repeatedly told that there was no enforceable plea bargain agreement as to punishment. Consequently, there was no right to withdraw his guilty plea since it was not based on a plea bargain arrangement accepted by the court. The admonishments by the trial court protected appellant's constitutional rights in that he was informed that he was receiving nothing pertaining to punishment in exchange for his guilty plea, and he was also informed of the other rights he was giving up by pleading guilty. *Jacobs v. State*, 493 S.W.2d at 793; *Moon v. State*,

572 S.W.2d 681, 682 (Tex.Crim.App.1978) (en banc).

■ We must, however, also address the impact of representations made by appellant's attorney and the prosecutor. It is apparent that at the time of the plea, there was a plea bargain "offer" [2] on the table which had not been withdrawn—that offer being that if the appellant would both plead guilty and make restitution, the State would recommend probation. This offer had not been withdrawn and was presumably available to appellant up until his sentencing. Appellant's trial counsel informed appellant of this offer before the plea was entered, and appellant now claims that this offer induced him into going through with his guilty plea even though he was aware that the trial court had not accepted the arrangement. Appellant's trial counsel informed appellant that he could enforce the offer with the State and that the trial judge would approve it.

■ A plea of guilty may be rendered invalid if it is induced by defense counsel's misrepresentations. *Ex parte Griffin*, 679 S.W.2d 15, 17–18 (Tex.Crim.App.1984). Reliance on this offer and enforcement promised by defense counsel, however, does not entitle appellant to relief in this case. First, there is no evidence that the offer and subsequent enforcement promises were misrepresentations made by defense counsel. Second, the record reflects that the offer was never accepted by appellant and thus never became susceptible to attempted enforcement because appellant never made restitution. It is appellant's own lack of performance that caused the offer to fail to ripen into an agreement. His present dilemma is solely of his own making.

■ Appellant contends that his failure to make restitution is excused because the State refused to put its offer into written form. It is apparent from the record,

**2.** Ordinarily a plea bargain offer would have no coercive effect when not yet accepted by the court at the time of the arraignment and plea because the guilt and punishment judgments would be made at the same time. In this case, however, the punishment hearing was scheduled for a later date, which could make an interim offer concerning punishment relevant on the issue of coercion.

however, that appellant knew that the State had so refused prior to the time his plea was entered. Under these circumstances, he cannot claim that his reliance upon the State's usual practice of reducing plea bargain agreements to writing induced him unwittingly to plead guilty.[3]

■ In a related argument, appellant asserts that he was given ineffective assistance of counsel, and thus his constitutional rights were violated. Trial counsel for appellant is alleged to have been unprepared to go to trial on the day of the arraignment, and thus appellant asserts he had no choice but to plead guilty. This condition is somewhat controverted by a prior announcement of ready for trial at a prior docket call. At the hearing on motion for new trial, appellant's trial counsel was not questioned as to his readiness for trial on the day of arraignment. But for appellant's self-serving allegations, there is no evidence of counsel's lack of readiness. *Cf. Glaze v. State*, 628 S.W.2d 252, 254 (Tex. App.—Beaumont 1982), *set aside on other grounds*, 675 S.W.2d 768 (Tex.Crim.App. 1984) (defense counsel testified at the hearing on motion for new trial with respect to his lack of readiness to go to trial). In addition, the record shows that at the time of the plea, no motion was made for continuance, and appellant did not bring any lack of readiness claim to the attention of the trial court. Indeed, this assigned basis of coercion is inconsistent with appellant's reliance on a plea bargain offer. The record, when read most favorably to appellant, shows that he voluntarily entered his guilty plea based on what he supposed was an enforceable plea bargain. The fallback claim he now makes, that his counsel was not prepared to go to trial even if he had known that he had no enforceable agreement, is too hypothetical to be persuasive on the issue of coercion. Under the circumstance shown in this record, appellant will not be heard to speculate as to what effect the knowledge of a lack of a plea

bargain agreement might have had on the conduct of his defense.

For reasons aforementioned, we hold that appellant made his guilty plea and the related waiver of a jury trial both knowingly and voluntarily. His constitutional rights of due process and equal protection of the laws were protected when he was thoroughly admonished by the trial court as to his rights and when he failed to accept the plea bargain offer before his sentencing. We also hold that appellant was given effective assistance of counsel since no misrepresentations were made by counsel and no lack of readiness was brought to the attention of the trial court or motion for continuance made. We therefore overrule appellant's first six points of error.

■ Appellant's final point of error complains of the trial court's failure to make findings of fact and conclusions of law at the hearing on motion for new trial. Appellant asserts that the trial court was required to make such findings and cites *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and *McKittrick v. State*, 535 S.W.2d 873 (Tex.Crim. App.1976). These two cases, however, refer to the very limited circumstance when the voluntariness of an "in-custody" confession is contested and the confession is sought to be introduced into the evidence. *Jackson* at 378 U.S. 376–377, 84 S.Ct. 1780–1781, 12 L.Ed.2d 915–916; *McKittrick* at 535 S.W.2d 875–876. This case does not involve such a confession. In this case, the item to be determined to be either voluntary or involuntary is an "in-court" plea which comes with its own constitutional safeguards in admonishment requirements found in Texas Code of Criminal Procedure art. 26.13 (Vernon Pamphlet 1988). Thus, there is no mandatory requirement that the trial court make written findings of fact as related to the voluntariness of a guilty plea at the hearing for new trial. Furthermore, it is implicit in the order overruling appel-

---

**3.** On oral argument, appellant's counsel urged that we impose upon the State the legal obligation of reducing to writing all negotiations incident to a plea bargain, even preliminary

offers. Because such a requirement would likely hamstring rather than facilitate the plea bargaining process, we decline to do so.

lant's motion for new trial that the trial court found that the plea was voluntary and that defense counsel had rendered effective assistance of counsel. These implicit findings are affirmed in our holdings under the first six points of error.

Appellant's pro se motion for new trial did complain of the voluntariness of the "judicial" confession introduced at trial to support the guilty plea. This confession, however, does not fall under the *Jackson v. Denno* doctrine now codified in Texas as art. 38.22 § 6 of the TEX.CODE CRIM. PROC.ANN. (Vernon 1979). That doctrine only applies to custodial confessions that are challenged on voluntariness grounds prior to being admitted into evidence. In this case the confession was affirmed and initialed by appellant in the presence of the trial judge, and appellant assured the trial court that it was true and correct prior to the court's acceptance of it. We hold that such a judicial confession does not require a written finding of voluntariness when challenged after the fact by a motion for new trial. The overruling of the new trial motion is sufficient. We therefore overrule appellant's seventh point of error.

Having overruled all of appellant's points of error, the judgment of the trial court is affirmed.

### APPENDIX

### PROCEEDINGS

THE COURT: This is a continuation of Cause Number F–86–9–8–6–4–5. This case is styled THE STATE OF TEXAS VERSUS MICHAEL RIGGS. I have before me a document that indicates your true name is Michael Runyon—(spelling)—R–U–N–Y–O–N? Mr. Runyon, you're charged with the offense of theft that is alleged to have occurred on October the 11th, 1985, and a series of transactions that appear to go through October 28th, 1985. Do you understand exactly what it is you're charged with in this court?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: Do you understand that you have a right to have a trial by jury?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: Do you understand that as a matter of fact this Court was ready and prepared today and thought you were going to be in the Number 1 position to go to trial today?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: I have before me a series of papers that indicate to me that you're not only going to give up that right, but you're also going to give up your right to confront witnesses because your attorney has an absolute right to cross examine any witness the State might bring in to testify against you and to bring witnesses in your own behalf. Has he explained to you each and every one of these papers, and do you understand the legal significance of each and every one of these papers?

THE DEFENDANT RUNYON: Everything except the Plea Bargain Paper because it is not complete.

MR. FACTOR: Your Honor, I explained to my client, we—this is not a plea bargain case.

THE COURT: (To the Defendant) Let me explain to you, Sir. Let me—let me go ahead and ask you a couple of other questions before we get to that, and then we'll discuss that. All right? Now, I want you to know that you have an absolute right to remain silent. Do you understand that?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: All right. There is contained within this paperwork a judicial confession, which has been signed by you and approved by your attorney and NOT approved by the State of Texas. May I have a statement on the judicial confession?

MS. HEATH: Your Honor, is there any particular place on there that you wish for me to sign?

THE COURT: The date concerns me. (Pausing and continuing) There are two (2) dates listed.

MS. HEATH: Oh! It should say, "on or about the following dates."

MR. FACTOR: Your Honor, I'll mark it on there.

THE COURT: I would ask all three (3) of you to initial it, please.

(Whereupon, the parties complied with the Court's request.)

MS. HEATH: It should be, "on or about the following dates."

THE COURT: Yes, Ma'am. But it's been struck.

MS. HEATH: "On or about the following dates in Dallas County, Texas."

THE COURT: What date? There are two (2) dates listed. The Court is going to pick an arbitrary [sic] date—that the date of October 11th. Is that agreeable with everybody—October the 11th? With the State?

MS. HEATH: That's fine.

THE COURT: (To Mr. Factor) Is that agreeable with you?

MR. FACTOR: Yes, Your Honor.

THE COURT: Everybody initial under my name.

(Whereupon, the parties complied with the Court's request.)

THE COURT: Thank you! (Pausing and continuing) Now, this judicial confession, which has now been amended and initialled by you—you have to understand, at this time you're giving up your right to cross examine witnesses or the right to call witnesses on your behalf. Do you understand that this is going to be used against you in the trial of this case?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: Is everything in this true and correct?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: All Right. Now, Sir, this crime is a second degree felony. It is punishable by confinement in the Texas Department of Corrections for a period not to exceed twenty (20) years nor less than two (2) years and a fine of ten thousand dollars ($10,000.00). Do you understand I can set your punishment anywhere within the range given to me by law?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: There is not a Plea Bargain Agreement in this case. What that means is you are entering your plea of, "Guilty," and I have been informed by both attorneys that there will be some testimony —probably an hour to two (2) hours worth of testimony on punishment; so what you're doing in fact is you're saying, "I'm pleading guilty. I am going to put on testimony," and the Court can set your punishment anywhere within the range given by law. THERE IS NO PLEA BARGAIN AGREEMENT. Now, do you understand?

THE DEFENDANT RUNYON: No. It's my understanding that we have an agreement as far as—

THE COURT: THERE IS NO PLEA BARGAIN AGREEMENT (Pausing and continuing)—The Plea Bargain Agreement goes to one thing and one thing only. That is the amount of restitution, $214,433.07; but there is no other Plea Bargain Agreement. They have agreed and stipulated the amount of restitution. As you can see from looking at this page, there is no time of years or whether it be confinement or whether it be probation or whether it be deferred adjudication. That is going to be left to my discretion after hearing testimony. Do you understand that?

THE DEFENDANT RUNYON: That what—that during the testimony—that is when the State would make their recommendation?

THE COURT: I do not know if the State will make a recommendation. You'll have to—if you go forward in this, the situation may be no recommendation. (Pausing and continuing) Have you discussed this with your attorney?

THE DEFENDANT RUNYON: My discussions with my attorney says that we have a recommendation from the State.

THE COURT: Well, the Court has nothing before it. I think we better go into

recess. (To Mr. Factor) Would you like to visit with your client?

MR. FACTOR: Yes. Yes, Your Honor.

THE COURT: Or had you rather do it on the record? I'll let you do it any way you want to.

MR. FACTOR: No. That's fine, Your Honor.

(Whereupon, a recess was had by the Court while Mr. Factor had a conference with his client.)

-----

(Whereupon, the proceedings were reconvened. Same appearances; same present).

-----

THE COURT: All right. (To the reporter) Mr. Howell, you will, please, make a docket notation—however you have to do it—we're going back to the Riggs matter at this time. (Pausing and continuing)—This is a continuation of Cause Number F–86–9–8–6–4–5. Mr. Runyon, as I recall when we went into recess, you had just told the Court that it was your understanding that there was a Plea Bargain Agreement, and I had just told you that in front of this Court was no Plea Bargain Agreement, save and except for the amount of the restitution. Now, you have been conferring with your attorney, and I want to tell you at this point in time, there is no Plea Bargain Agreement, except for the amount of restitution. Do you with [sic] to go forward in this plea?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: Are you sure?

THE DEFENDANT RUNYON: I'm stuck! (Pausing and continuing)—Is this the reason I'm—

THE COURT: No, Sir. You're not stuck because I've got a jury coming up here in two (2) hours, and in two (2) hours we could have you seated right there, and we could start your jury trial. Everybody has got their witnesses ready. We could do that. It is simply up to you.

THE DEFENDANT RUNYON: I would like to proceed.

THE COURT: Are you sure that's what you want to do?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: (Continuing) Do you understand, Sir, that if you were not a citizen of the United States of America that a plea of, "Guilty," to an offense such as this could result in your deportation, your exclusion from admission to this country or your denial of naturalization under Federal Law?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: And as you know—because I just told you this less than a minute ago—if you want to—you could enter this plea of "Guilty" before a jury and have a jury set your punishment; you could enter a plea of "Not Guilty," and have a jury come up here and could hear all of the facts of this case and make a decision based on those facts as to whether you were guilty or not guilty. Do you understand?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: (Continuing)—Do you understand that if a jury found you guilty, you could have that jury or this Court set your punishment anywhere within the range given to me by law?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: (Continuing) Now, Sir, you now know all of the alternatives that you have for disposing of this case. You now know all the rights and privileges given to you under our laws of this State, the Constitution of this State and the Constitution of the United States, all of which you are giving up when you enter this plea of, "Guilty"?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: Do you understand that this is your trial?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: And do you understand that if the evidence substantiates your guilt, I can find you guilty?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: ... you may arraign the Defendant.

\* \* \* \* \* \*

THE COURT: Now, Sir, to this charge, how do you plead, "Guilty," or "Not Guilty"?

THE DEFENDANT RUNYON: "Guilty."

THE COURT: (To Mr. Factor) Is your client competent to enter this plea?

MR. FACTOR: Yes, Your Honor.

THE COURT: And do you believe he's entering this plea freely, voluntarily, intelligently and knowingly?

MR. FACTOR: Yes, Your Honor.

THE COURT: (To the Defendant) Sir, do you know and understand that you have a right to have a trial by jury?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: And do you know and understand you have a right to have witnesses brought to testify for you and to have your attorney cross examine the State's witnesses?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: Do you know and understand that you have the right to remain silent?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: Are you telling the Court at this time you wish to give up those rights and proceed?

THE DEFENDANT RUNYON: Yes, Ma'am.

THE COURT: The State may offer evidence.

MS. HEATH: The State would offer at this time, State's Exhibit Number 1, which is a signed, judicial confession, signed by Michael Runyon.

THE COURT: Any objections?

MR. FACTOR: No, Your Honor.

THE COURT: State's Exhibit Number 1 will be admitted.

MS. HEATH: The State rests.