Pamela McGoldrick **FIELDER,**
Appellant,

v.

The **STATE of Texas,** State.

No. 2–90–228–CR.

Court of Appeals of Texas,
Fort Worth.

June 30, 1992.

Discretionary Review Refused
Oct. 14, 1992.

Law Office of Richard Haynes, and Richard Haynes, R. Trent Gaither, Houston, for appellant.

Tim Curry, Criminal Dist. Atty., C. Chris Marshall, J. Rex Barnett, Alan Levy, and Sylvia Mandel, Asst. Dist. Attys., Fort Worth, for State.

Before JOE SPURLOCK, II, FARRIS and LATTIMORE, JJ.

OPINION

JOE SPURLOCK, II, Justice.

Pamela McGoldrick Fielder appeals a conviction for voluntary manslaughter pursuant to a plea bargain agreement before the court. The issue is whether Fielder's *nolo contendere* plea was voluntary. We find it was involuntary because Fielder's lawyer misrepresented to her that she would not have to do jail time as a consequence of her plea; she had no notice that jail time would be a consequence of her

plea; and the judge did not try to ensure that the plea was voluntary. We reverse the judgment of the trial court and remand with instructions to either enforce the plea agreement as made by the parties, or alternatively, allow Fielder to withdraw her plea.

Fielder was initially tried for the offense of murder, which ended in a mistrial. In the second trial, Fielder was convicted of the lesser-included offense of voluntary manslaughter. That conviction was reversed and remanded for new trial. *Fielder v. State*, 756 S.W.2d 309 (Tex.Crim.App. 1988). The new trial resulted in a plea bargain agreement of *nolo contendere* to the charge of voluntary manslaughter. She signed documents titled "Plea Agreement" and "Agreed Punishment Recommendations."

The plea agreement provided that:

[T]he State will recommend Defendant's sentence to be a term not to exceed 6 years in the Texas Department of Criminal Justice, Institutional Division, with said sentence being suspended and the Defendant placed on probation for a period not to exceed six (6) years.

Probation conditions are not mentioned. However, the agreed punishment recommendations that Fielder's sentence would be a six-year jail sentence, probated for six years, included the following printed form, with none of the blanks filled in (emphasis added):

*Note:* The parties are not allowed to make binding agreements regarding the length of probation supervision or the terms and conditions of probation. However, non-binding recommendations will be considered as follows:

_____Shock Probation  
_____Restitution Center  
_____Community Service  
_____Electronic Monitoring  

_____Boot Camp Alt. Incarceration Program  
_____**Detention for a term of** _____ **days**  
_____Substance abuse treatment facility  
_____Community Corrections Facility  

———

The trial judge accepted Fielder's plea and announced that she would follow the plea bargain agreement. She sentenced Fielder to the agreed upon six-year sentence, to be probated, but further sentenced her as follows:

As a condition of probation, you are ordered to submit to a period of detention in Tarrant County Jail to serve a term of one hundred eighty days. That will be four thousand three hundred twenty hours, beginning at 3:30 p.m. today, July 10, 1990. And that will be flat time with no credit for good time, so you will serve it hour-for-hour.[1]

Immediately following this first notice that the sentence of detention was additionally imposed on her, the following dialogue between Fielder and the judge occurred:

THE COURT: Do you have any questions you want to ask, anything you want to say?

THE DEFENDANT: This is not my understanding of the plea agreement. And I was told—It's not my understanding.

THE COURT: ... And is that not what you understood that you would get, probation for six years?

THE DEFENDANT: I was told that I—

THE COURT: First answer my question. All right?

THE DEFENDANT: My understanding—

THE COURT: No, whether or not you understood that the sentence would be six years, probated for six years.

1. When the judge issued the final order, she changed Fielder's probation time from 180 days, as provided in Tex.Code Crim.Proc.Ann. art. 42.12, sec. 12 (Vernon 1992), to 30 days pursuant to Tex.Code Crim.Proc.Ann. art. 42.12, sec. 6b(a) (Vernon 1979), which was in effect at the time of the offense in 1981. *See* Act of May 30, 1975, 64th Leg., R.S., ch. 341, § 4, 1975 Tex.Gen.Laws 909, *amended by* Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.17, 1989 Tex.Gen.Laws 3471, 3506.

THE DEFENDANT: Yes, we had. That was not the original agreement, but we changed that this afternoon.

THE COURT: That was your agreement this afternoon before you entered your plea; is that correct?

THE DEFENDANT: Partially.

MR. GAITHER [defendant's attorney]: Judge, there are some things that are going to have to be cleared up.

. . . .

MR. GAITHER: Part of the understanding that she had, Judge, was that part of the agreement would be that she would not be—she would not serve any time.

. . . .

THE COURT: The sentence is imposed.

Subsequently, Fielder filed a "Defendant's Motion to Reconsider" requesting that the sentence be modified to reflect the contemplated plea agreement, or alternatively, that she be allowed to withdraw her plea. The request was denied, and this appeal followed.

■ In points one and two Fielder contends that the trial court erred by injecting jail time into the plea bargain agreement when it was not included or contemplated by the parties. The State counters that as jail time is a condition of probation, specifically authorized by TEX.CODE CRIM.PROC. ANN. art. 42.12, that it is within the court's *discretion* to require Fielder to serve jail time as a condition of probation, citing *Simpson v. State*, 772 S.W.2d 276, 277

(Tex.App.—Amarillo 1989, no pet.); *Custard v. State*, 746 S.W.2d 4 (Tex.App.—Dallas 1987, pet. ref'd); *Jackson v. State*, 720 S.W.2d 153, 154 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd). The State argues that as no affirmative representation of "no jail time" was ever made by the State, nor was such a condition incorporated in the written plea bargain agreement that in effect there was no plea bargain on this issue. We note that the majority of the cases the State has cited involve jury recommendations of probation to the judge, instead of being plea bargain agreements.

■ Jail time is a condition of probation authorized by TEX.CODE CRIM.PROC.ANN. art. 42.12 [2], and is within the court's discretionary authority to impose or not. Because the documents signed by Fielder did not explicitly state that "no jail time" was a condition of her plea and the judge otherwise has the right to set the conditions, we overrule points one and two. The court has general discretion to add such a condition. Nevertheless, an analysis of the third point of error requires reversal of the conviction because, if the judge intends not to follow the plea bargain, she must comply with TEX.CODE CRIM.PROC.ANN. art. 26.-13(a)(2) (Vernon 1989) and permit the defendant to withdraw her plea.[3] *See Washington v. McSpadden*, 676 S.W.2d 420, 423–24 (Tex.Crim.App.1984) (Miller, J., concurring).[4]

■ In her third point, Fielder contends the court erred by not permitting her to

2. See citations in footnote one.

3. Prior to 1977, a trial judge was not bound in any way by the plea bargain and could assess punishment anywhere within the punishment range. *Washington v. McSpadden*, 676 S.W.2d 420 (Tex.Crim.App.1984). TEX.CODE CRIM.PROC. ANN. art. 26.13 was amended in 1977 and now provides that a trial judge who is not going to follow a plea bargain must inform the defendant of this fact and allow her to withdraw her plea. Act of May 29, 1975, 64th Leg., R.S., ch. 341, 1975 Tex.Gen.Laws 909 *amended by* Act of May 13, 1977, 65th Leg., R.S., ch. 280, 1977 Tex.Gen.Laws 748.

4. In his concurrence, Judge Miller distinguishes trial judges' roles in the areas of probation and plea bargaining. Judge Miller states that in the

area of probation, trial judges have the discretion to grant or deny an application for probation, and if the judge decides to grant probation, he has wide discretion to impose reasonable terms and conditions of probation. *McSpadden*, 676 S.W.2d at 423. TEX.CODE CRIM.PROC.ANN. art. 42.12, sec. 6 (Vernon 1979) provided: "The court having jurisdiction of the case shall determine the terms and conditions of probation and may, at any time, during the period of probation alter or modify the conditions; ..." *See* TEX.CODE CRIM.PROC.ANN. art. 42.12, sec. 11 (Vernon 1992). Judge Miller contrasts this to plea bargaining, and states that if a trial judge does not intend to follow the plea bargain, including agreements as to terms and conditions of probation, he must comply with TEX.CODE CRIM.PROC. ANN. art. 26.13(a)(2) and permit the defendant to withdraw his plea. *Id.*

withdraw her *nolo contendere* plea since she was misinformed about the consequences of her plea agreement. She argues that a plea of guilty or *nolo contendere* will not support a conviction when that plea is motivated by sufficient misinformation conveyed by the court or one of its officers, citing *Russell v. State,* 711 S.W.2d 114, 116 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd); *Ex parte Griffin,* 679 S.W.2d 15 (Tex.Crim.App.1984); *Huffman v. State,* 676 S.W.2d 677 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd).

Fielder also contends that when a court entertains a plea agreement, it must assure that the plea is entered into voluntarily and knowingly and that the trial court is informed as to all the *material terms* of the agreement, citing *United States v. Kerdachi,* 756 F.2d 349, 352 (5th Cir.1985). Fielder argues that the court is required to inform an accused of the direct consequences of her plea, including the fact that punishment could be inflicted under the plea, and that jail time is punishment and not just an additional condition of probation, citing *Ex parte Griffin,* 679 S.W.2d at 17; *Alexander v. State,* 163 Tex.Crim. 53, 288 S.W.2d 779 (1956); *United States v. Corn,* 836 F.2d 889, 893 (5th Cir.1988) (reversible error found because trial court failed to warn the accused about the possibility of having to make restitution).

The State argues that a plea agreement is not made involuntary simply because the sentence effectively exceeded what the defendant expected, even if that expectation was raised by the defendant's attorney, citing *West v. State,* 702 S.W.2d 629, 633 (Tex.Crim.App.1986), *withdrawn on reh'g,* 725 S.W.2d 718 (court found plea voluntary where defendant stated he expected deferred adjudication and instead received sentence of twenty-five years because defendant admitted that he had been advised

by counsel and the court that the entire punishment range was open to the court); *Russell,* 711 S.W.2d at 116. The State acknowledges, though, that one exception to the "expectation" rule exists when the State, defense counsel, or trial court induces the plea by directly misrepresenting that the State made a concession which in fact was not part of the plea bargain, citing *Ex parte Hairston,* 766 S.W.2d 790, 791–92 (Tex.Crim.App.1989); *Ex parte Griffin,* 679 S.W.2d at 17. An exception of this type applies to the case at hand.

Fielder's lawyer told Fielder that she would receive "no jail time" as a consequence of her plea, to which, the State replies that it kept its bargain by not recommending any jail time.[5] *See Ex parte Griffin,* 679 S.W.2d at 17. In effect, though, Fielder's lawyer misrepresented to her that in return for her pleading *nolo contendere* and receiving six years in jail (to be probated for six years), she would not have to serve any jail time.[6]

Fielder testified at the "Defendant's Motion to Reconsider" hearing as follows:

Q: [By Mr. Haynes]: Did you enter into the plea of nolo before this District Court on the basis of my representation to you that it would be probation, no jail, no fine, enter a plea of nolo and transfer the probation to Harris County?

A: [By Ms. Fielder]: Yes, sir, I did.

Q: Would you have entered your plea before this District Court if there had been any suggestion or talk that the Court might as a part of the sentence impose any jail time?

A: No, sir, I would not have.

Q: Was the plea that you entered into before this district Court then a voluntary plea or an involuntary plea?

A: Given that the contingencies that I understood were not part of it, it was then involuntary.

---

**5.** At the hearing on the motion to reconsider, the prosecutor, Mr. Levy, stated: "Now, as far as I am concerned, the State of Texas has kept its end of the bargain. We didn't recommend any jail time."

**6.** At the hearing on the motion to reconsider, Mr. Haynes (one of Fielder's trial counsel, albeit the one who was not present at the time of the

plea) introduced as Exhibit 2–A his calendar with notes regarding a telephone conversation he had with the State prosecutor. The calendar provided: "Tel con W/Alan Levy—date case must be disposed of—Alan told her details— R.H. conflicts." It further provided: "(6 years pro (no fine)) no jail."

Q: Was it your understanding that if the Court declined to accept the plea bargain agreement, that the Court would permit you to withdraw your plea?

A: If declined, yes, I would be allowed to withdraw my plea.

Q: Were you ever told at any time by anybody, Ms. Fielder, that confinement in jail for any period was a possibility, as a consequence of entering this plea before the District Court?

A: No, sir, absolutely not.

Q: Were you told by anybody, the lawyers, anybody in the Court, that there was any possibility that a fine would be imposed by the Court as a part of the punishment affixed to your plea?

A: No, sir.

Moreover, the prosecutor (Mr. Levy) stated the following:

It was clear when I finished with Mr. Haynes' conversation it was his understanding that his client was not going to get any jail time. That's the way he contemplated it. Frankly, in my understanding, it never occurred to me in our conversations—I don't think it really ever occurred to either side that the Court might impose jail time separate and apart from our plea agreement.... *I have no doubt that his understanding of it was she would get six years probated for six years and there would be no jail time.* ... I am sure Ms. Fielder was informed by Mr. Haynes of his understanding of the plea agreement, which was that she didn't get any jail time. *And I certainly agree with Mr. Haynes to the extent that she entered the plea probably with that understanding, because that was Mr. Haynes' understanding. And I assume he conveyed his understanding to her.* [Emphasis added.]

The above dialogue shows that "no jail time" was an essential element in Fielder's decision to accept the plea bargain. Although the State does not concede that "no jail time" was bargained for, it is not possible to understand how Fielder's counsel could "understand" no jail time was included, and the State's attorney have "no doubt" about it, and it not be true.

The dialogue also shows that Fielder's plea of guilty was not a knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *See Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

The instant case is similar to *Ex parte Stephenson,* 722 S.W.2d 426 (Tex.Crim. App.1987) in which a habeas corpus applicant claimed that his guilty plea pursuant to a plea bargain was not knowingly and intentionally made. *Id.* at 427. The court found the plea was involuntary, stating: "[T]he facts in this particular case show an *implied* agreement by the parties to avoid the one-third time requirement.... [I]t is undisputed the applicant was induced by the plea bargain to plead guilty and did not do so intentionally and knowingly." *Id.* at 428 (emphasis added). We believe the logic of *Ex parte Stephenson* controls.

To the contrary though, in *Mills v. State,* 799 S.W.2d 447, 449 (Tex.App.—Corpus Christi 1990, pet. ref'd) while the appellant complained that there was a misunderstanding by the court regarding the plea bargain terms, the court of appeals found that the appellant's plea agreement was voluntary. The court reasoned that even though appellant's counsel never told appellant that jail time was a condition of probation, and neither the State nor the defendant's counsel ever explicitly discussed the conditions of probation, appellant did not otherwise show that his plea was involuntary. *Id.* The court further stated that "[d]espite appellant's counsel's complaints, this record does not show that appellant personally ever expected 'total' probation. Appellant never claimed that 'total' probation was an element of the bargain, as we believe he must in order to prevail." *Id.,* citing *Ex parte Hairston,* 766 S.W.2d at 792 (defendant must show that parole eligibility date was element of bargain to prevail if parole eligibility date advice was erroneous).

The case on appeal is distinguishable from *Mills,* however. It is clear from the

record of the plea hearing that the imposition of the jail time (initially for 180 days—hour for hour) was a shock to Fielder and her attorney at that time. It was unexpected. The record shows not only that Fielder, but the lawyers on both sides had expected "total" probation, and "total probation" was an essential element of the bargain.

The State though relies upon *Russell* where the defendant was convicted for two offenses of involuntary manslaughter. As part of a plea bargain agreement, the State recommended "seven years in the Texas Department of Corrections and a five hundred ($500) dollar fine in each case." *Russell*, 711 S.W.2d at 115. The defendant claimed that the State had agreed to recommend that the seven year sentences run consecutively. The judge ordered that the sentences run consecutively. The defendant filed a motion for new trial. The court of appeals upheld the trial court's decision to stack the sentences effectively lengthening the time the defendant would serve.

*Russell* is distinguishable from the instant case because Russell asked at the original sentencing, "Do the two cases run concurrent," and the judge replied, "That is up to me to decide." The court of appeals held that this informed the defendant that it was within the judge's discretion whether to have the sentences run concurrently or consecutively. Therefore, as the defendant had notice, the agreement was voluntary. *Id.* at 116. Moreover, in *Russell*, neither the defendant nor her lawyer stated that the lawyer had in fact misrepresented to her that part of the plea agreement was that the sentences would run concurrently. *Id.* at 117.

The State also relies on *Runyon v. State*, 754 S.W.2d 430 (Tex.App.—Dallas 1988, no pet.). In *Runyon*, the appellant complained that the trial court breached the plea bargain agreement when it sentenced him to prison, and therefore, he should have been allowed to withdraw his plea. However, the appellate court found that the trial judge had repeatedly admonished the appellant that there was no enforceable

plea bargain agreement as to punishment and that appellant was receiving nothing pertaining to punishment in exchange for his plea of guilty. Thus, the court held that the plea bargain agreement was voluntary because appellant was informed, and therefore, his constitutional rights were not violated. *Id.* at 432.

In *Ex parte Williams*, 758 S.W.2d 785 (Tex.Crim.App.1988), the plea agreement was silent regarding whether there was an affirmative finding that a deadly weapon had been used, but the trial court entered a deadly weapon finding. The defendant argued that the plea was not voluntary because he thought part of the agreement was that the exclusion of the affirmative finding was a part of the plea agreement. The court held that the plea was voluntary because the indictment contained the allegation of use of a deadly weapon, and therefore, appellant received sufficient notice of a deadly weapon allegation contemporaneous with the acceptance of the plea bargain agreement. Moreover, the court found that the plea agreement was silent, and that the defendant did not allege or prove that the exclusion of the affirmative finding was a part of the plea agreement or that the State was ever under any obligation regarding the finding. *Id.* at 786. The court specifically held:

> A party to an agreement has no contractual rights to demand specific performance over terms not appearing in the agreement *or record.*
>
> . . . .
>
> Therefore, this Court will not disturb the terms of this agreement by reading into it *details not contemplated by the parties as reflected* in the agreement *or raised by the evidence.*

*Id.* (emphasis added).

In the instant case, Fielder had no notice that jail time was going to be a condition of probation, and furthermore, the State acknowledged that neither party thought the trial judge might impose jail time. We find Fielder's plea therefore involuntary, not only because of misinformation by her attorney, but also because she had no notice that jail time would be required as a conse-

quence of her plea bargain agreement. The State was aware that "no jail time" was expected.

█ At the time of the plea, Fielder was never given the chance by the court to explain that her voluntary plea included an understanding or expectation that she would not serve jail time as a consequence of her plea bargain agreement. The court instead repeatedly insisted on a specific answer only to the question of whether her plea was for six years, probated. *See Otero*, 768 S.W.2d 848 (Tex.App.—Corpus Christi 1989, no pet.) (court held that trial court did not follow a plea bargain agreement and erred in not allowing appellant to withdraw the plea where the court had agreed to the State's recommendation of maximum punishment of forty years, but sentenced the appellant to sixty years); *see also Kerdachi*, 756 F.2d at 352.

The *Otero* court stated that:

[T]he trial court has a statutory obligation to inquire into the existence of an agreement and comprehend the terms of any agreement before accepting the plea. Had the trial court persisted in this case, the terms of the bargain may have been clearer.

*Otero*, 768 S.W.2d at 851 n. 3. Likewise, the judge in the instant case not only had the duty to either accept or reject the agreement on the *parties' terms*, but she had the duty to try to understand the terms of the agreement. It is not a sufficient answer to say that the trial court has unlimited discretion over the probationary condition terms, especially where, as here, the State, appellant, and her counsel had an understanding of the terms of probation different than that the court imposed.

It appears from the trial record that the judge was apprised of Fielder's disagreement with the court about the terms of the agreement when the judge stated:

And all I want to know is you have a Defendant up here who has signed a plea bargain agreement agreeing to six years probated for six years. Now she is saying that wasn't her agreement, and she is still under oath and still sworn to tell the truth.

At that time the judge would not let Fielder explain the extent of her agreement, although the judge was aware that the plea agreement as amplified by the court was not Fielder's entire agreement.

We note the court's additional comments at the time of the plea, showing her awareness that "no jail time" was a significant part of the plea, when she questioned Fielder and her counsel as follows:

MR. GAITHER: Judge, there are some things that are going to have to be cleared up.

THE COURT: We will clear them up right now, because I have here a plea bargain agreement which she has stated she signed—

MR. GAITHER: Yes, Judge.

THE COURT: —knowingly, voluntarily, and freely, that provides for punishment to be assessed at six years in the Institutional Division of the Texas Department of Criminal Justice, and that after conviction, probation be granted of the confinement assessed as punishment.

Now did you not understand that to be six years probated for six years?

MR. GAITHER: The problem, Judge, is she does not understand the distinction between that—

THE COURT: I am just asking her about six years probated for six years. Was that not your understanding of the agreement? You can answer that yes or no.

THE DEFENDANT: I need you to clarify a definition for me.

THE COURT: All right. Then your bond is declared insufficient. You have been found guilty, and we will do the sentencing on a different—

MR. GAITHER: Your Honor—

THE COURT: Yes?

MR. GAITHER: I am sorry.

THE COURT: I have a jury waiting out in the hall.

MR. GAITHER: May we approach the bench?

THE COURT: No. Let's do it on the record.

MR. GAITHER: Judge, there are some things that I need to clear up with Ms. Fielder. She does have questions about it, and I think that we can handle that after the—I apologize for getting into this with the Court. There are some things that have come up that were not anticipated. And I need to have an opportunity to sit down with Ms. Fielder.

THE COURT: I understand that. Right now, I want to know if her agreement was not that the sentence would be six years, probated for six years. That was the agreement, was it not?

MR. GAITHER: That was part of the agreement, yes.

THE COURT: Part of the agreement? Can you show me anything else on the plea bargain agreement, other than six years probated for six years?

MR. GAITHER: Part of the understanding that she had, Judge, was that part of the agreement would be that she would not be—she would not serve any time.

THE COURT: Was that represented to them?

MS. MANDEL: Your honor, we have made no representations as to any of the terms and conditions of probation. Prior to entering this plea, I told Mr. Gaither that the Court was responsible for entering terms and conditions of probation, and that I didn't know what conditions you might enter. I did mention that you normally gave community service restitution, and that even though she was going to Harris County, that that was a probability. And any other terms and conditions you might impose, I didn't know, but I was making no representations as to any of it.

THE COURT: Let me ask you this—

MR. LEVY: I don't mean to interrupt the plea. Can I talk to Mr. Gaither for one second?

THE COURT: Sure.

(COUNSEL FOR BOTH SIDES CONFERRED OFF THE RECORD)

MR. GAITHER: Judge, if I might, I am working at a little bit of a loss because I have not been the one who was involved with the negotiations between the State. And until I have an opportunity to talk to Mr. Haynes, who was, we are kind of—I am kind of hard pressed to say exactly what all was said. And I think that's where the confusion lies. And what I would ask is what I asked of the Court earlier; that is, to simply have an opportunity to be allowed to do that prior to the imposition of the sentence.

THE COURT: The sentence is imposed.

The State's attorney Levy was the prosecutor who worked with Haynes (Fielder's attorney) in reaching the plea agreement prior to the date of the hearing. However, neither Haynes nor Levy were the attorneys presenting the agreement to the court. If the court was misinformed about the agreement, the fault lies partly with each of these two able attorneys, who would have presented the true agreement to the court at the time of the plea had they both been there.

We stress that the court would not have been bound by any "no jail time" agreement, and could freely reject the plea even then. The right of the court to impose jail time is discretionary. However, if so admonished, Fielder could have withdrawn her plea because while she and the State had agreed to no jail time, the court might not accept the plea without the same. The court failed to discover the extent of the plea and properly accept or reject it, because the two attorneys actually presenting the plea simply failed to fill in the applicable blanks, or be fully aware themselves of Alan Levy's and Richard Haynes' agreement on Pamela Fielder's plea of no contest to this celebrated, much litigated case.

Therefore, finding that appellant's *nolo contendere* plea was involuntary, we hold the judge erred in not allowing Fielder to withdraw her plea. We sustain point of error number three. The court erred in this instance by adding a significant discretionary condition to probation that was not agreed to, and thereafter failed to permit the withdrawal of the plea after discovering that the term was unexpected.

In point of error number four, Fielder contends that the trial court erred in sentencing appellant without the benefit of a preliminary sentence investigation. Because we sustained point of error number three, we do not address this point.

We overrule points of error one and two, but sustain point three. Even though the judge had discretion to add a probation condition of jail time to the plea agreement, once she realized the appellant had not agreed to and did not expect that condition, and would not have pled if she knew that was to be done, she should have allowed Fielder to withdraw her plea.

We reverse and remand this cause with instructions that the trial judge conduct a hearing to inquire about the true terms of the plea agreement and then either specifically enforce the plea agreement made by the parties, or allow Fielder to withdraw her plea. *See Ex parte Austin,* 746 S.W.2d 226, 227 (Tex.Crim.App.1988); *Perkins v. Court of Appeals,* 738 S.W.2d 276, 283–84 (Tex.Crim.App.1987); *Contrearas v. State,* 658 S.W.2d 334, 338 (Tex.App.—Austin 1983, no pet.).